Filed 8/22/24

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DAVONYAE SELLERS,<br><br>        Petitioner,<br><br>   v.<br><br>THE SUPERIOR COURT OF SACRAMENTO COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | C100036<br><br>(Super. Ct. No. 21FE018661) |

ORIGINAL PROCEEDING in mandate and/or prohibition.  The stay order issued by this court on February 2, 2024, will terminate upon finality of this opinion.  Petition denied.  Deborah D. Lobre, Judge.

Amanda M. Benson, Public Defender, Cecilia C. Herrera, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Edrina M. Anderson and Clara M. Levers Deputy Attorneys General, for Real Party in Interest.

1

In this mandamus action, petitioner Davonyae Sellers challenges the trial court's denial of his motion to suppress the fruits of a warrantless search of a vehicle. The question presented is whether the plain-view observation of a marijuana rolling tray and approximately 0.36 grams of loose marijuana on the rear floorboard, coupled with other factors, provided probable cause for police officers to conduct a warrantless search of a vehicle. Because we conclude that the search was supported by probable cause, we deny the petition.

BACKGROUND FACTS AND PROCEDURE

On November 5, 2021, around 4:30 p.m., defendant was riding in the front passenger seat of a vehicle that was stopped by police for a minor traffic infraction (Veh. Code § 22450 [limit line violation]). Aside from the traffic violation, there was nothing suspicious about the vehicle.

During the traffic stop, three police officers emerged from the patrol car and approached the vehicle. Officer Conner Mills approached the driver's side of the vehicle, while Officers Derek Goetting and Mark Thrall approached the passenger side.

Officer Mills contacted the female driver and explained the reason for the traffic stop. The driver was sweating and both defendant and the driver appeared slightly nervous. Officer Mills requested a driver's license and asked if there was any marijuana or anything illegal in the vehicle. The driver said no. However, Officer Mills could see in the back of the vehicle a tray commonly used for rolling marijuana cigarettes or blunts.[1] The tray was covered in a sticky residue consistent with marijuana. Officer Mills found the presence of the tray suspicious given the driver's statement that there was no marijuana in the vehicle.

---

[1]     A cigar that has been hollowed out and filled with marijuana. (Merriam-Webster Unabridged Dict. Online (2024) https://unabridged.merriam-webster.com/unabridged/blunt, par. 3> [as of Aug. 19, 2024], archived at https://perma.cc/K9YP-X3YP.)

While Officer Mills was speaking with the driver, Officer Thrall conducted a plain view search of the vehicle by peering through the rear passenger's side window.[2] Using his flashlight, Officer Thrall saw "crumbs" of green, loose-leaf marijuana scattered throughout the rear floorboard, as well as "somewhat larger" "round circular nuggets" of marijuana under the front passenger seat.

The marijuana observed by the police officers was "loose" in the vehicle. According to Officer Thrall, it appeared as if the marijuana had been "crumbled" throughout the rear of the vehicle. The marijuana was not in a container and the officers did not observe any containers nearby. The officers did not recall smelling any marijuana odor and they found no rolling papers, joints, blunt wrappers or blunts, pipes, vapes, or other smoking devices in the vehicle. The driver obeyed all commands and there was nothing to suggest she was driving under the influence.

Based on the loose marijuana observed on the floorboard, together with the marijuana rolling tray and other factors, the police officers concluded there was probable cause to search the vehicle. Thus, officers asked defendant and the driver to exit the vehicle so officers could perform the probable cause search. As defendant was preparing to exit the vehicle, Officer Thrall asked if he had any weapons on him. Defendant responded that he had a firearm, which was located on the side of the passenger seat. Officer Goetting then searched and found a black nine-millimeter handgun underneath the front passenger seat.

---

[2] The "plain view" exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. (*People v. Breault* (1990) 223 Cal.App.3d 125, 131-132; *People v. Sandoval* (1985) 164 Cal.App.3d 958, 963 [illumination provided by officer's flashlight is of no significance].)

Officer Goetting also collected the loose marijuana from the rear passenger floorboard. In total, the marijuana collected from the vehicle weighed 0.36 grams, which the officers testified was a "usable" amount.

Defendant was charged with unlawful possession of a firearm by a person previously having been adjudged a ward of the court (Pen. Code, § 29820). On April 3, 2023, defendant filed a motion to suppress the evidence obtained by the warrantless search of the vehicle, including the firearm. Defendant argued that there was no probable cause to justify the search. The People opposed the motion.

After a joint preliminary hearing and suppression motion hearing, the magistrate denied the motion. The magistrate reasoned that the police officers had probable cause to search the vehicle because the loose marijuana observed by the officers was "contraband" under Vehicle Code section 23222, subdivision (b).

After defendant was arraigned on the information, defendant renewed the suppression issue in a motion to dismiss under Penal Code section 995. The People filed an opposition, and the trial court denied the motion.

Defendant filed a petition for a writ of mandate and/or prohibition directing that his motion to suppress be granted and that the charges arising from the illegally-obtained evidence be dismissed. After the People filed an informal response, we issued an order to show cause and stayed proceedings in the trial court pending further order of this court. The People filed a written return to the order to show cause, to which defendant replied. We now address the merits.

DISCUSSION

Defendant contends that the trial court erred in denying his motion to suppress the evidence seized during the search of the vehicle. We conclude that the search was supported by probable cause, albeit for reasons different from those given by the trial court.

4

A. *Legal Background*

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. (U.S. Const., 4th Amend.) Reasonableness under the Fourth Amendment generally requires obtaining a judicial warrant. (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1213.) Warrantless searches are presumed to be unreasonable, and therefore illegal, subject only to a few carefully delineated exceptions. (*People v. Vasquez* (1983) 138 Cal.App.3d 995, 1000; *People v. Johnson* (2020) 50 Cal.App.5th 620, 625 (*Johnson*).) The burden is on the People to show that a warrantless search falls within one of those exceptions. (*People v. Vasquez, supra*, 138 Cal.App.3d at p. 1000.)

"One such exception . . . is the automobile exception, under which an officer may search a vehicle without a warrant so long as the officer has probable cause to believe the vehicle contains contraband or evidence of a crime. [Citation.]" (*People v. Hall* (2020) 57 Cal.App.5th 946, 951 (*Hall*).) When police officers have probable cause to believe a vehicle contains contraband or evidence of criminal activity, even for a minor infraction, they may conduct a warrantless search of any area of the vehicle in which there is probable cause to believe it may be found. (*People v. Evans* (2011) 200 Cal.App.4th 735, 753; *People v. McGee* (2020) 53 Cal.App.5th 796, 805 (*McGee*).)

"Probable cause is a more demanding standard than mere reasonable suspicion. [Citation.] It exists 'where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found . . . .' [Citation.]" (*Johnson, supra*, 50 Cal.App.5th at p. 625.) As the United States Supreme Court has noted, "probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." (*Illinois v. Gates* (1983) 462 U.S. 213, 232 [76 L.Ed.2d 527, 544].) Further, "[a]n officer is entitled to rely on his [or her] training and experience in drawing inferences from the facts he [or she] observes, but those inferences must also 'be grounded in objective facts and be capable of rational

5

explanation.' " (*United States v. Lopez-Soto* (9th Cir. 2000) 205 F.3d 1101, 1105, quoting *United States v. Garcia-Camacho* (9th Cir. 1995) 53 F.3d 244, 246; accord *People v. Carrillo* (1995) 37 Cal.App.4th 1662, 1667.) When considering the validity of the evidence, it is to be analyzed " 'as understood by those versed in the field of law enforcement.' " (*Illinois*, *supra*, 462 U.S. at p. 232 [76 L.Ed.2d at p. 544], quoting *United States v. Cortez* (1981) 449 U.S. 411, 418 [66 L.Ed.2d 621, 629].) "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount . . . to probable cause." (*Ornelas v. United States* (1996) 517 U.S. 690, 696 [134 L.Ed.2d 911, 919].) As such, we consider the totality of the circumstances, and analyze these facts as would a reasonable police officer, in assessing the officer's probable cause, rather than looking to singular facts in a vacuum. (See *Illinois,* at pp. 230-231, 238 [76 L.Ed.2d at pp. 543-544, 548].)

Before California decriminalized marijuana possession, case authority established that a police officer's observation of *any* amount of marijuana in a vehicle established probable cause to search under the automobile exception. (See *Johnson, supra*, 50 Cal.App.5th at pp. 628-629, citing *People. v Strasberg* (2007) 148 Cal.App.4th 1052, 1059-1060, and *People v. Waxler* (2014) 224 Cal.App.4th 712, 721, 725.) However, in 2016, the voters passed Proposition 64, the Control, Regulate, and Tax Adult Use of Marijuana Act, as approved by the voters, General Election, November 8, 2016, which decriminalized the possession of small amounts of marijuana for personal use. (*Johnson, supra*, at p. 625.) Under Health and Safety Code section 11362.1, subdivision (a)(1),[3] it is lawful for persons 21 years or older, under defined circumstances, to possess and transport up to 28.5 grams of cannabis. (§§ 11362.1, subd. (a)(1); 11362.3, subd. (a).)

---

[3] Undesignated section references are to the Health and Safety Code.

Subdivision (c) of section 11362.1 further provides that "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, and no conduct deemed lawful by this section shall constitute the basis for detention, search, or arrest." (§ 11362.1, subd. (c).)

Since the passage of Proposition 64, courts have held that *lawful* possession of marijuana in a vehicle, by itself, does not provide probable cause for a warrantless search on the theory that there may be a greater, unlawful amount of marijuana in the vehicle. (*Hall, supra*, 57 Cal.App.5th at pp. 952-953; accord, *Johnson, supra*, 50 Cal.App.5th at p. 629; *People v. Lee* (2019) 40 Cal.App.5th 853, 861-862, 866 (*Lee*).) As the appellate court explained in *Hall*, "Proposition 64 and, in particular, section 11362.1[, subdivision] (c) . . . fundamentally changed the probable cause determination by specifying lawfully possessed cannabis is 'not contraband' and [that] lawful conduct under the statute may not 'constitute the basis for detention, search, or arrest.' [Citations.]" (*Hall, supra*, at pp. 954-955.) As a result, we now attach "fairly minimal significance" to a defendant's possession of a legal amount of marijuana. (*Lee, supra*, at p. 861.)

However, section 11362.1, subdivision (c) applies only to conduct "deemed lawful" under that section. (*People v. Moore* (2021) 64 Cal.App.5th 291, 300 (*Moore*).) Thus, while possession of a lawful amount of marijuana alone is insufficient to establish probable cause, it may support a finding of probable cause if it is coupled with other factors contributing to a reasonable belief that the vehicle contains contraband or evidence of criminal activity. (*Ibid*.; *Blakes v. Superior Court of Sacramento County* (2021) 72 Cal.App.5th 904, 911-912 (*Blakes*).) For example, even after the passage of Proposition 64, it is unlawful to possess or transport more than 28.5 grams of cannabis (§ 11362.1, subd. (a)(1)); to smoke or ingest cannabis while driving or riding in the passenger seat of a vehicle (§ 11362.3, subds. (a)(7) & (a)(8)); to possess an open container or package of cannabis while driving or riding in the passenger seat of a vehicle (§ 11362.3, subd. (a)(4)); or to drive a vehicle while under the influence of any drug

7

(Veh. Code, § 23152, subd. (f).)  It follows that a warrantless vehicle search will be justified where the presence of a lawful amount of marijuana, combined with other suspicious facts or circumstances, gives officers reasonable grounds to believe the suspect has an illegal amount of marijuana or is otherwise violating marijuana regulations.  (*Moore, supra*, 64 Cal.App.5th at pp. 298, 300.)

B.      *Standard of Review*

Because the motion to suppress was made during the preliminary hearing, and the renewed motion was submitted on the transcript of that hearing, we disregard the findings of the trial court and review the determination of the magistrate who ruled on the motion to suppress.  (*Blakes, supra*, 72 Cal.App.5th at p. 910.)  We review the evidence in the light most favorable to the magistrate's ruling and defer to the trial court's factual findings, express or implied, if they are supported by substantial evidence.  (*Johnson, supra*, 50 Cal.App.5th 620, 626.)  We exercise our independent judgment in determining, on the facts found, whether the search was constitutionally reasonable.  (*Id*. at pp. 626-627.)

C.      *Analysis*

Defendant does not contest the legality of the initial traffic stop but argues the ensuing search of the vehicle was unlawful because it was without probable cause.  Defendant's principal argument is that small amounts of "stray marijuana" scattered around the floorboards of a vehicle does not provide probable cause for a search.

The People initially argued that the loose marijuana, although lawful in amount, was contraband because the manner in which it was being transported violated statutory prohibitions against driving with an open container or package of marijuana (§ 11362.3, subd. (a)(4)) or loose cannabis flower (Veh. Code, § 23222, subd. (b)).  The People later abandoned these arguments, however, and at oral argument relied solely upon the totality of circumstances to support a finding a probable cause.  The People argued that, based on the totality of the circumstances, the police had probable cause to conduct the search

8

based on the evidence that (1) the suspects seemed nervous, (2) the suspects falsely stated there was no marijuana in the vehicle, (3) officers saw a marijuana rolling tray in the back of the vehicle, and (4) officers observed a "usable" amount of loose marijuana scattered on the floorboard.

We conclude that the loose marijuana was contraband, and illegally transported, and thus find the search was proper. As noted above, while Proposition 64 decriminalized the use and possession of marijuana in limited circumstances, it did not decriminalize marijuana use and possession in all circumstances. Thus, "even after the enactment of Proposition 64, there is probable cause to search a vehicle if a law enforcement official sees a legal amount of cannabis in an illegal setting . . . ." (*Blakes, supra*, 72 Cal.App.5th at p. 912.) Relevant here, section 11362.3, subdivision (a)(4), states that it is unlawful to "[p]ossess an open container or open package of cannabis . . . while driving, operating, or riding in the passenger seat or compartment of a motor vehicle . . . ." (§ 11362.3, subd. (a)(4).)

Defendant argues there was no "open container" violation because the marijuana observed by the police officers was not in a container. Defendant's argument does not hold up under scrutiny. Although the words used in a statute are the most useful guide to its intent, the language of a statute should not be given a literal meaning if doing so would frustrate the purposes of the legislation or lead to absurd results. (*People v. Johnson* (2022) 83 Cal.App.5th 1074, 1083; *In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1844.) To construe the statute as defendant urges would lead to an absurd result and undermine the purpose of the open container law, which is to ensure that marijuana is transported only in sealed containers such that it is inaccessible while driving or riding as a passenger in a vehicle. (See *People v. Souza* (1993) 15 Cal.App.4th 1646, 1652.) It would defy logic to conclude that an individual with an unsealed container or open package of marijuana is violating the law, while someone with usable amounts of marijuana scattered loosely on a seat or around the passenger compartment is not.

9

Thus, in spite of the People's belated concession,[4] we construe the statute, consistent with its apparent purpose, to prohibit any person from possessing marijuana *that is not in a closed package or container* while driving, operating, or riding as a passenger in a vehicle. In other words, when read together, the most logical interpretation of sections 11362.1 and 11362.3 is that these statutes decriminalized only the possession of less than 28.5 grams of marijuana in a *closed* container or package in a motor vehicle and that the law continues to prohibit the possession of open containers of marijuana *or* loose marijuana not in a container, just as before Proposition 64's enactment. In short, these statutes did not decriminalize the transportation of loose marijuana in a vehicle, even if lawful in amount. Consequently, we conclude that the marijuana at issue in this case was contraband because it was being transported illegally under section 11362.3, subdivision (a)(4).[5]

Further, even if we were to conclude the loose marijuana was not contraband, we are persuaded that the totality of the circumstances observed by the police officers gave probable cause to search the vehicle. Given the evidence that (1) the driver and defendant seemed nervous, (2) the officers were falsely told that there was no marijuana in the vehicle, (3) officers saw a marijuana rolling tray in the back of the vehicle, and (4) officers observed a "usable" amount of loose marijuana scattered on the floorboard, the officers reasonably believed that they would find contraband or evidence of unlawful marijuana possession in the vehicle. (*Moore*, *supra*, 64 Cal.App.5th at pp. 299, 302 [odor

---

[4] We are not bound to accept a party's concession on a question of law. (*Desny v. Wilder* (1956) 46 Cal.2d 715, 729; *People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1021 [although the Attorney General's concession entitled to "appropriate deference," the appellate court is not bound by it].)

[5] This renders it unnecessary for us to decide whether the loose marijuana was contraband under Vehicle Code section 23222, subdivision (b)(1).

of marijuana plus nervous, evasive behavior reasonably caused an officer to believe a vehicle contained more marijuana than the law allows].)

We reject defendant's argument that the amount of marijuana observed was too small to justify the search. Defendant's argument relies on *Hall, supra*, 57 Cal.App.5th at page 946, in which police officers observed " 'a green leafy substance, that appeared to be broken up' " in the driver's lap. (*Hall*, *supra*, at p. 949.) *Hall* is distinguishable because, in that case, there was no evidence that the fragments of loose marijuana observed in the driver's lap constituted a usable quantity, as opposed to useless trace amounts. (*Id*. at p. 958; see *People v. Rubacalba* (1993) 6 Cal.4th 62, 65-66.) Here, in contrast, the testimony was undisputed that the officers observed a "usable" amount of loose marijuana.

In sum, we conclude the presence of a "usable" amount of unlawfully possessed marijuana, together with the other facts observed or known to the police officers, provided probable cause to search the vehicle. (*McGee, supra*, 53 Cal.App.5th at pp. 803-805; *People v. Fews* (2018) 27 Cal.App.5th 553, 562-564; *People v. Souza*, *supra*, 15 Cal.App.4th at p. 1653.)

DISPOSITION

The petition for writ of mandate is denied. The stay order issued by this court on February 2, 2024, will terminate upon finality of this opinion.

\s\ ,<br>Krause, J.

I concur:

\s\ ,<br>Earl, P. J.

11

Duarte, J., Dissenting.

The majority rejects a concession by the Attorney General to hold that an open container violation does not require the existence of a container, whether open or closed. It then alternatively and cursorily concludes that the sum of three legal and innocuous events constitutes a "totality of the circumstances" justification for a warrantless vehicle search. I cannot agree with the majority on either of these points. Accordingly, I dissent.

After what was clearly a targeted traffic stop of a car that appears to have contained African-American and Hispanic individuals (see *People v. Flores* (2024) 15 Cal.5th 1032, 1054 (conc. opn. of Evans, J.) ["Black individuals were stopped 131.5 percent more frequently relative to their proportion of the population and Hispanic individuals comprised the largest racial group of stopped individuals." "Stopped Black and Hispanic individuals were more likely to be searched than stopped White individuals"]), a questionably invasive "plain view" observation of an unclear amount of discarded marijuana on the back floorboards of the car, and extensive questioning of the driver, who had a sweaty upper lip (see *id.*, at pp. 1052-1053 (conc. opn. of Evans, J.) [discussing "the danger in considering 'nervous' and 'evasive' behavior in the totality of the circumstances analysis when devoid of real world context"]), the police executed a warrantless search of the car in which defendant was riding. The search was performed after the driver politely declined an officer's request for consent to search. A postsearch total of 0.36 grams of marijuana was represented as the amount scraped off the car's rear floorboards and found under the passenger seat, although the scrapings were never analyzed and, in my view, could easily have contained other materials from the floor of the car.

1

First, the majority concludes that the officers witnessed a violation of Health and Safety code section 11362.3, subdivision (a)(4)[1]--which criminalizes "an open container or open package" of marijuana in a vehicle--when they observed the scattered marijuana on the floorboards of the car. (Maj. opn., *ante*, at pp. 9-10.) However, I agree with the Attorney General's concession at oral argument that scattered marijuana on a car's floorboards does *not* constitute an open container of marijuana. I know of no authority, and the majority cites none, that upholds an open container violation in the *undisputed* absence of a container of any sort. There was not even wrapping paper involved, were I inclined to stretch the definition of "container." (See *In re Randy C.* (2024) 101 Cal.App.5th 933, 940-941 [holding that "a marijuana blunt, wrapped in paper but for a 'speck of marijuana' on the flattened end," was "an 'open container' of marijuana within the meaning of section 11362.3"].) The reason for this dearth of authority is clear: Without *any* evidence of a container or package, there can be no *open* container or package. The presence of an empty rolling tray elsewhere in the car is irrelevant, as is the testimony (questionable in my view, but unchallenged on appeal) that a useable amount of marijuana is any amount that "could be ingested by a human." As but one example, a tablespoon of beer "could be ingested by a human," but common sense dictates that a small amount of beer spilled on the rear floorboards of a car would not constitute an open container of alcohol as defined by Vehicle Code section 23222, subdivision (a).

Although the majority refers to this conclusion as an "absurd result" and points out that the purpose of the open container law is to ensure that marijuana is inaccessible to persons while they are driving, operating, or riding as passengers in a vehicle (maj. opn, *ante*, at p. 9), here there is no evidence that the marijuana scattered on the rear floorboards was accessible for consumption by anyone in the car; indeed, the back seat of

---

[1] Further undesignated statutory references are to the Health and Safety Code.

the car was unoccupied.  Tellingly, although the amount scraped from the floorboards may have been "useable," there was neither evidence that the marijuana was in any condition to actually *be* used nor evidence that anyone was in the position to scrape it together and use it while driving, operating, or riding in the car.  Beyond the tray, no drug paraphernalia was found.  Further, the scattered amount was approximately *one-eightieth* of the amount that would be *legal* if it were in a sealed baggie on the front seat.  To criminalize the tiny amount of scattered marijuana on the rear floorboards but legalize the closed baggie in the front seat containing 80 times that amount strikes me as far more absurd than my proposed plain language interpretation of the statute as requiring an open container to find a violation of an open container law.**2**

Second, the majority concludes in the alternative, with minimal analysis, that the "totality of the circumstances" provided probable cause for the search even assuming there was no open container violation.  In addition to the scattered marijuana on the floorboards, the majority points to the evidence that the driver and defendant "seemed nervous," that the officers were "falsely told that there was no marijuana in the vehicle," and that there was a rolling tray in the back of the car.  (Maj. opn., *ante*, at p. 10.)

The one case cited by the majority is eminently distinguishable, containing far more to provide reasonable grounds for belief of guilt than the instant case.  (See, e.g., *People v. Celis* (2004) 33 Cal.4th 667, 673 [" ' "The substance of all the definitions of

---

**2**  The magistrate understandably rejected the argument that there could be an open container violation where there was no container but reasoned that the officers had probable cause to search the vehicle because the loose marijuana they observed was "contraband" under Vehicle Code section 23222, subdivision (b).  The Attorney General wisely abandoned his defense of this reasoning after we requested supplemental briefing on the language in subdivision (b)(1) of that statute specifically requiring the driver to be in "possession *on their person*" while driving in order for "loose cannabis flower not in a container" to be an infraction.  The majority does not address this argument, and instead rejects the Attorney General's concession that the trial judge correctly found there was no violation of Health and Safety Code section 11362.3, subdivision (a)(4), in this case.

probable cause is a reasonable ground for belief of guilt" ' "]; see *People v. Moore* (2021) 64 Cal.App.5th 291, 299 [cited by the majority, where a panel of this court found probable cause for searching a Jeep existed when the officer interrupted a suspected drug transaction in a high-crime area, the defendant (who had been leaning into the passenger side of the Jeep) left the scene when the officer approached, the officer smelled "the strong odor of fresh marijuana emanating from the Jeep," and the driver had an "implausible explanation" for the smell, was nervous, and gave an ambiguous answer when asked if anything illegal was in the Jeep].) In contrast, in this case, the officers ostensibly stopped the car for a limit line violation, and the record reveals no arguably suspicious circumstances related to the car or its occupants at the time of the stop. There was no suspected drug transaction. There was no smell of marijuana or any other suspicious smell. There was no container, open or closed. Although there was an empty rolling tray on the backseat, there was no evidence of current drug consumption and no evidence the car's occupants were under the influence. There were no evasive answers to questions or attempts to avoid contact with the officers. The "false" response of "no" to the officer's question as to whether there was any marijuana in the car was far from a major falsehood; there was no evidence that the car's occupants were *aware* of the small amount of marijuana scattered on the rear floorboards. The driver explained to the officer that her sweaty upper lip was a medical condition. The video evidence does not reveal any nervous or uncooperative behavior by the car's occupants, particularly when considering the intimidating circumstances of the stop: Three uniformed officers approached the car together and used flashlights to look inside the windows (in broad daylight) from both sides. The driver obeyed all commands and respectfully refused the officers' requests to search the car for guns, made before they spotted the scattered marijuana.

4

Section 11362.1, subdivision (c) precludes the consideration of the legal possession of the 0.36 grams of marijuana found on the floorboards; its presence in the car cannot properly support the probable cause determination absent other factors properly considered, and here there were none.  The empty rolling tray was neither illegal nor proof of any illegality, and the majority does not explain its relevance to this analysis.  Likewise, the fact that the car's occupants "seemed" nervous and that the driver disclaimed knowledge of one third of a gram of marijuana scattered on the floorboards behind her passenger did not supply probable cause for this warrantless search.  Simply put, there was no evidence of any ongoing illegal activity whatsoever.  I would grant the petition and issue the writ.

 

 

 
_____\s\_____
Duarte, J.